FILED
2010 Feb-18 PM 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DONNA S. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-0195-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Donna S. Miller, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Jerry M. Lang determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the plaintiff "has the residual functional capacity to perform sedentary work as defined in the Social Security regulations. She requires a sit/stand option that allows her to move around her work area at her discretion." [R. 15]. Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

4

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited. Such a hypothetical question would allow disability claims to be expedited in cases in

which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. <u>Id</u> at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." <u>Id.</u> If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As <u>Varney</u> recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. <u>Id.</u>

## DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "degenerative joint disease and degenerative disc disease." [R. 13]. However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ." [R. 15]. The ALJ concluded under step five of the sequential evaluation that the plaintiff can perform other work that exists in significant numbers in the national economy and is, therefore, not disabled.

The plaintiff was 47-years-old at the time of the ALJ's decision. She has a high school education and has worked as a store manager and property manager at the light and medium levels of exertion. The plaintiff claims disability because of severe neck, shoulder and thoracic pain. The plaintiff has a history of several surgeries: in 2001, she had neck surgery at C5-C6 with anterior plating; on March 11, 2004, she had a partial hemilaminectomy at left L5 with removal of extruded L5-S1 disc; on November 17, 2005, she had right hand joint arthroplasty with trapeziectomy, ligament reconstruction, and flexor tendon interposition, tendon harvest from a separate incision site, and De Quervain release; and on December 21, 2005, she had removal of the plate at C5-C6 and a partial corpectomy at C6-C7.

Indeed, an MRI of the plaintiff's cervical spine on September 2, 2005, showed:

> [c]entral and left paracentral disk herniation and osteophyte formation at C6-7 producing moderate to severe central stenosis and severe left-sided neural foraminal stenosis. There is severe degenerative disk disease at C6-7 with posterior osteophyte formation producing moderate to severe spinal stenosis and prominent left-sided uncovertebral spurring producing severe left neural foraminal stenosis.

[R. 198]. Swaid N. Swaid, M.D., a neurosurgeon, saw the plaintiff on October 11, 2005. Dr. Swaid noted that the plaintiff had "a history of previous surgery at C5-C6 in 2001 with an anterior plating device placed at that time." [R. 192]. Dr. Swaid's opinion was that the plaintiff:

> will require surgery for a fairly pronounced disc herniation at C6-C7. We will more than likely need to remove the plate at C5-C6. This will be

8

> scheduled on an elective basis.  However, due to this relatively severe mid-thoracic pain, we will also obtain an MRI of the thoracic spine to further evaluate.

[R. 193].  An MRI scan of the plaintiff's thoracic spine on October 11, 2005, showed widespread degenerative changes with disc desiccation noted throughout the mid thoracic region, a small left lateral recess disc herniation at T7-T8, a suspected small right paracentral disc herniation with a small free disc fragment at the T6-T7 level, and an indeterminant [sic] bone lesion at the T10 vertebra.  [R. 195-96].  On December 21, 2005, Dr. Swaid performed the anterior cervical diskectomy and fusion at C6-C7 with removal of the plate at C5-C6.  [R. 182-83].

On February 28, 2006, she was seen by Shelinder Aggarwal, M.D., on the referral of Dr. Swaid.  [R. 253-54].  Dr. Aggarwal noted that the plaintiff's range of motion is limited by 50 percent in all planes.  [R. 254].  He diagnosed chronic neck and low back pain due to arthritis and disc disease, and chronic pain syndrome.  [R. 255].  On March 29, 2006, she returned to Aggarwal for follow up.  Plaintiff told Dr. Aggarwal that the medicines he prescribed continued to benefit her, and she denied any side effects.  [R. 252].  Her neuromuscular examination was unchanged.  [Id.].

On April 25, 2006, Dr. Aggarwal noted, "She still has good days and bad days."  [R. 251].  On July 19, 2006, the neuromuscular exam was unchanged, but she wanted to change from Percocet to Lorcet because of the expense.  [R. 250].  On April 27, 2006, Dr. Aggarwal, the plaintiff's treating pain management physician, completed a Physical Capacities Evaluation, which limited the plaintiff to lifting 10 pounds

9

occasionally, sitting three hours a day and standing and walking one hour a day. [R. 242]. On his Clinical Assessment of Pain form, Dr. Aggarwal stated that: (1) Pain is present to such an extent as to be distracting to adequate performance of daily activities or work; (2) Physical activity would result in greatly increased pain to such a degree as to cause distraction from tasks; and (3) Drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, and drowsiness. [R. 243-44].

The ALJ discounted Dr. Aggarwal's opinion because the plaintiff had denied medication side effects on one visit. [R. 20].

> I have placed no particular weight in the forms completed by Dr. Aggarwal as they are inconsistent with the medical evidence and his own treatment notes. As indicated previously, the only abnormality Dr. Aggarwal noted on the claimant's physical examination was reduced range of motion. Additionally, while the claimant complained of pain during her initial visit to Dr. Aggarwal, she rated her pain as a six on a scale of one to 10, which is moderate in nature, and not preclusive of work activity. Furthermore, she has repeatedly reported a further reduction in her degree of pain with her prescribed medications.

[Id.]. Actually, the plaintiff told Dr. Aggarwal that her pain was a six out of 10 currently, but at its worst is a 10 out of 10, with aggravating factors including coughing, bending, lifting, sitting and standing for prolonged periods. [R. 253]. Moreover, because Dr. Aggarwal is a specialist in the field of pain management, his opinion is entitled to more weight in this area.[1] The reasons stated by the ALJ in giving no weight to Dr. Aggarwal's

---

[1] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

10

opinion are not supported by substantial evidence. Therefore, his opinion must be taken as true.

Additionally, while the ALJ recited the 11th Circuit's pain standard, he made no findings under either prong. [R. 15]. The ALJ does mention the plaintiff's underlying condition:

> Given the claimant's history of degenerative disc disease, degenerative joint disease and multiple surgeries, it is logical that she might have difficulty performing her past work as a property manager or store manager as these positions were performed at the light and medium levels of exertion according to the vocational expert's testimony. This level of physical exertion could reasonably exacerbate her symptoms. However, there is nothing in the record precluding her from performing sedentary work, especially if she was allowed to sit or stand as needed to relief [sic] any discomfort.

[R. 18-19]. However, he concludes that "her conditions are not of the severity that they could reasonably be expected to give rise to her alleged symptoms." [R. 16]. This conclusion, and the ALJ's finding that the plaintiff's testimony concerning her impairments and ability to work "cannot be fully credited," are is not supported by substantial evidence. [Id.]. Therefore, the plaintiff's pain testimony must be accepted as true. The plaintiff testified that because of her pain, she must lie down two to three times a day for 30 minutes to one hour. [R. 42].

The ALJ found that the plaintiff is unable to return to her past relevant work. At the hearing, Dr. William Crunk, Jr., a vocational expert, testified that a hypothetical individual with the plaintiff's limitations with pain and the need to lie down two to three times a day for 30 minutes to an hour, would be precluded from all work

activity. [R. 46]. Because the testimony of the plaintiff and her treating physician, Dr. Aggarwal, must be accepted as true, the plaintiff is unable to work.

## CONCLUSION

For the reasons set forth above, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 18 February 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.